IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PASCHALL L. SANDERS,

                Petitioner,               OPINION AND ORDER

      v.                                12-cv-230-wmc

DEBORAH McCULLOCH, Director,
Sand Ridge Secure Treatment Center,

                Respondent.

---

       Petitioner Paschall L. Sanders is currently in state custody at the Sand Ridge Secure Treatment Center in Mauston, Wisconsin.  He petitions this court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his involuntary civil commitment under the Wisconsin Sexually Violent Persons Act, Wis. Stat. ch. 980.  The respondent has filed a motion to dismiss the petition, arguing that review is barred by the doctrine of procedural default.  For the reasons set forth below, the court will grant that motion and dismiss this case.

FACTS[1]

       Sanders has a lengthy criminal record dating back to the early 1970s.  Following his conviction for repeated sexual assaults of two women at gun point, Sanders was sentenced to twenty years in 1975, but then released from prison on parole in 1976.

---

[1] The following facts are taken from the parties' undisputed submission, as well as the public record of the petitioner's earlier convictions.

After having his parole revoked in January of 1976 for driving a car without the owner's consent, Sanders was again released only to arrested and returned to prison some two years later for two counts of armed robbery.   Paroled again in 1986, Sanders absconded. This parole was eventually revoked in 1993, following his conviction for second-degree sexual assault of a child.

Anticipating his next release from the penitentiary, the State of Wisconsin filed a petition seeking Sanders' involuntary civil commitment as a "sexually violent person" pursuant to Chapter 980 of the Wisconsin Statutes.   Under the current version of Chapter 980, the state may commit indefinitely "a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers a mental disorder that makes it likely that the person will engage in acts of sexual violence."   Wis. Stat. § 980.01(7).   In Sanders' case, the state undertook to prove that: (1) Sanders was convicted of a "sexually violent offense"; (2) Sanders suffered from a "mental disorder"; and (3) Sanders was "dangerous" because his mental disorder makes it more likely than not that he will engage in one or more future acts of sexual violence.   Wis. J.I.–Criminal 2502, at 1-2 (footnotes omitted).

Sanders' commitment proceeding was tried before a jury in 2009 and focused on whether he suffered from a "mental disorder" as defined by Chapter 980.   A mental disorder is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence."   Wis. Stat. § 980.01(2).   Consistent with this definition, the circuit court gave the following

2

jury instruction for this element at trial:

> "Mental disorder" means a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence and causes serious difficulty in controlling behavior.  Mental disorders do not include merely deviant behaviors that conflict with prevailing societal standards.  Not all persons who commit sexually violent offenses can be diagnosed as suffering from a mental disorder.  Not all persons with a mental disorder are predisposed to commit sexually violent offenses or have serious difficulty in controlling behavior.  You are not bound by medical opinions, labels, or definitions.

This instruction was based on the pattern jury instruction found in Wis. J.I.–Criminal 2502, at 2 (footnotes omitted).

As proof that Sanders suffered from the requisite mental disorder, the state presented testimony from a psychologist who diagnosed Sanders with "paraphilia" and "antisocial personality disorder."[2]   The psychologist elaborated further that both of these mental disorders constituted volitional impairments, which predisposed Sanders to "engage in future acts of sexual violence."   On December 15, 2009, the jury found that Sanders was a sexually violent person as defined by Wis. Stat. § 980.01(7).  Therefore, the circuit court entered a judgment committing Sanders to the Wisconsin Department of Health Services "for control, care and treatment" for an indefinite period until such time that he no longer qualifies as a sexually violent person.

Sanders filed a post-judgment motion for new trial, arguing that the pattern jury

---

2 According to the state's testifying expert at Sanders' trial, "paraphilia" is "a category of sexual disorders" that featured enduring patterns of recurrent thoughts, urges or behaviors and sexual fantasies for more than six months, causing "impairment or distress to the individual." *In re Commitment of Sanders*, 2011 WI App 125, ¶ 7, 337 Wis. 2d 231, 238-39, 806 N.W.2d at 253-54.   "Antisocial personality disorder" is characterized by a failure to follow rules or conform to social norms, resulting in a "pervasive pattern of disregard . . . for the rights of

instructions (Wis. JI-Criminal 2502) incorrectly stated the law regarding what constitutes "serious difficulty in controlling behavior."   In particular, Sanders argued that the definition of mental disorder contained "internally inconsistent" language that misled the jury about whether it could find him to be a sexually violent person even if he did not have a mental disorder that caused him serious difficulty in controlling behavior. Sanders argued, therefore, that he was entitled to a new trial "in the interest of justice" pursuant to Wis. Stat. § 752.35 because "the real controversy was not fully tried."[3]   The circuit court denied Sanders' post-conviction motion following a hearing on October 14, 2010.

On direct appeal, Sanders raised the identical issue in his post-judgment motion. Noting that Sanders' counsel did not object to the instruction given by the circuit court, the Wisconsin Court of Appeals rejected Sanders' argument and affirmed the commitment order on August 23, 2011.  *See In re Commitment of Sanders*, 2011 WI App 125, 337 Wis. 2d 231, 806 N.W.2d 250.  In doing so, the court of appeals also found that the jury instruction was not incorrect or misleading for purposes of the relief sought

---

others." *Id.*
3 Wis. Stat. § 752.35 states:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

under Wis. Stat. § 752.35.   The Wisconsin Supreme Court agreed and summarily denied Sanders' petition for review on December 1, 2011.   *See State v. Sanders*, 2012 WI 2, 338 Wis. 2d 322, 808 N.W.2d 714 (2012) (unpublished).

Sanders now seeks habeas relief from the circuit court's commitment order, invoking 28 U.S.C. § 2254.   In four overlapping grounds for relief, Sanders contends that he was denied substantive due process for reasons outlined in *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Kansas v. Crane*, 534 U.S. 407 (2002), because the pattern jury instruction given at his trial was inadequate to require a finding that he had serious difficulty controlling his behavior as the result of a mental disorder.   The respondent notes that the claim presented during Sanders' direct appeal involved an issue of state law under Wis. Stat. § 752.35, which governs the discretionary authority to reverse where the interest of justice requires.   Because Sanders did not present a federal constitutional claim in state court when he had the opportunity to do so, the respondent argues that habeas review is barred by the doctrine of procedural default.

OPINION

## I.  Exhaustion

### A.   Exhaustion of State Court Remedies

Typically, a federal court may not entertain a state prisoner's petition for habeas corpus relief unless he has first exhausted all remedies available in state court.[4]   28 U.S.C.

---

[4] Exceptions to the exhaustion requirement exist only where (1) "there is an absence of

§ 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  The doctrine of exhaustion serves the interests of comity between federal and state sovereigns by giving state appellate courts a meaningful opportunity to consider and correct any alleged constitutional violation.  *See Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007).  Inherent in the exhaustion requirement is the habeas petitioner's duty to present his federal claims to the state courts "fully and fairly."  *See Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008) (citations omitted).  To "fairly" present a claim, a petitioner must raise the same operative facts and controlling legal principles before the state courts in a procedurally proper manner.  *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  In other words, a petitioner is required to present the state courts with "the same [substantive] claim that he urges upon the federal courts." *Picard*, 404 U.S. at 275-76.  To "fully" present a claim, the petitioner must complete one round of state court review of a fairly presented claim, including seeking discretionary review before the state supreme court.  *McAtee v. Cowan*, 250 F.3d 506, 508-09 (7th Cir. 2001) (citing *O'Sullivan*, 526 U.S. at 845-48).

As discussed above, Sanders argues that he was denied substantive due process at his trial because the pattern jury instruction given by the circuit court did not comply with the legal standard articulated in *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Kansas v. Crane*, 534 U.S. 407 (2002).  In *Hendricks*, the United States Supreme Court again held that the criteria for confinement found in the Kansas Sexually Violent Predator

---

available State corrective process" or (2) "circumstances exist that render such process

Act satisfied substantive due process requirements because the statute required a finding of dangerousness to one's self or others and "link[ed] that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior." 521 U.S. at 358.  Reviewing the same Kansas statute five years later in *Crane*, the Supreme Court found that due process is satisfied if there is proof that the offender has "serious difficulty in controlling behavior," explaining that such a showing was necessary to "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." 534 U.S. at 413 (citing *Hendricks*, 521 U.S. at 357-58).

The parties dispute whether the substantive due process theory raised by Sanders on habeas review here was fairly presented in state court.  In deciding whether a claim was fairly presented, a federal court must inquire into:  (1) whether the petitioner has framed his claim in the state proceedings in a way that "brings to mind a specific constitutional right"; and (2) whether he has alleged a set of facts that are "well within the mainstream of constitutional litigation."  *Lieberman*, 505 F.3d at 670 (citing *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001)); *see also Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (articulating the test for fair presentment under the habeas corpus exhaustion doctrine).

The respondent provides copies of the briefs submitted by Sanders during his state

ineffective to protect the rights of the applicant."  28 U.S.C. §  2254(b)(1)(B).

court appeal and petition for review by the Wisconsin Supreme Court.   (Dkt. # 11, Exh. B, D, F).   These submissions show that Sanders presented one ground for relief in his post-judgment motion and direct appeal, arguing that a new trial was required "in the interest of justice" by Wis. Stat. § 752.35 and *State v. Perkins*, 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 762, because the defective jury instruction "prevented the real controversy from being fully tried."   (Dkt. # 11, Exh. B at 1).

As a matter of state law, Wis. Stat. § 752.35 confers "formidable" discretionary power upon the Wisconsin Court of Appeals to reverse a circuit court and to order a new trial in "exceptional cases."   *State v. Jensen*, 2011 WI App 3, ¶ 97, 331 Wis. 2d 440, 794 N.W.2d 482 (2010).   A new trial may only be ordered "in either of two ways: (1) whenever the real controversy has not been fully tried; or (2) whenever it is probable that justice has for any reason miscarried."   *State v. Hicks*, 202 Wis. 2d 150, 159-60, 549 N.W.2d 435 (1996).   For purposes of obtaining a new trial in the interest of justice, the court of appeals must conclude that the real controversy has not been fully tried because "the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case." *State v. Henley,* 2010 WI 97, ¶ 81, 328 Wis. 2d 544, 581, 787 N.W.2d 350, 368 (quoting *State v. Hicks,* 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996)).

The ground for relief that Sanders presented in state court -- that the jury instruction was deficient under state law -- is substantively different from the claim made before this court -- that the jury instructions were *constitutionally* inadequate.   Defective

8

jury instructions violate a defendant's right to due process under the Fourteenth Amendment only when the alleged error negates an element of an offense or the state's burden to prove guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970); *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993).   As the following clarification in the Wisconsin Court of Appeals decision shows, Sanders neither made this argument in state court nor did the court of appeals interpret his ground for relief as presenting a constitutional issue:

> As we have seen, the issue on this appeal is whether the case was "fully tried." *See* Wis. Stat. § 752.35. Thus, we have to determine whether the jury had before it all evidence relevant to whether Sanders was "more likely than not" to commit another crime of sexual violence. *See* Wis. Stat. §§ 980.05(3) & (5); 980.02(2)(a)1, (b), & (c); 980.01(1m). Although, as we note in Part II, a person's criminal history is not dispositive on whether he or she is more likely than not to re-offend, and the jury was so told, it is nevertheless something that the jury may consider. *State v. Kienitz*, 227 Wis.2d 423, 428-429, 436, 597 N.W.2d 712, 714-715, 718 (1999) (Trial court was entitled to rely on criminal history "in determining that it was much more likely than not that Kienitz would reoffend."). *See* Wis. Stat. § 980.05(4) ("Evidence that the person who is the subject of a petition under [§] 980.02 was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder."). Thus, we have set out what the jury heard about Sanders' criminal history not to titillate but because it is material whether we should use our discretionary authority to reverse because the matter was "not fully tried."

*In re Commitment of Sanders*, 2011 WI App 125, ¶6, n.3, 337 Wis. 2d 231, 237, n.3, 806 N.W.2d 250, 253, n.3.

Although Sanders noted in state court the legal requirements for civil commitment found in *Hendricks, Crane,* and *Addington v. Texas*, 441 U.S. 18 (1979), he did so only to

provide context for the proceeding at issue.  He did not argue that the instruction itself violated due process.  In all other respects, Sanders' state court argument centered on whether he was entitled to a new trial in the interest of justice pursuant to Wis. Stat. § 752.35.  This was and still is an issue of state law.[5]

Sanders acknowledged during his direct appeal that his argument under Wis. Stat. § 752.35 was "relatively novel in Wisconsin," but now contends that his citation to *Hendricks* and *Crane* was adequate to put the state courts on notice of his substantive due process claim.  Sanders insists, therefore, that his federal constitutional claims were fairly presented.

This argument overlooks the emphasis found in the statutory scheme governing federal habeas review, which ultimately focuses on whether a claim has been "adjudicated on the merits" by the state court in such a way that is "contrary to, or involved an unreasonable application of," clearly established federal law.  28 U.S.C. § 2254(d)(1).  Mere citation to precedent containing constitutional analysis is not sufficient to present a due process claim fairly in state court or to preserve such a claim for federal habeas corpus review.  *Verdin*, 972 F.2d at 1474.  The Seventh Circuit has stressed repeatedly that

---

[5] Sanders' request for a new trial "in the interest of justice" under Wis. Stat. § 752.35 is a state law ground for relief, the denial of which is not cognizable on federal habeas corpus review.  Habeas relief may only be granted if the petitioner is being held "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where the state court decision has based its decision on an independent and adequate state law ground, a federal court has no jurisdiction to address the claim by writ of habeas corpus.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990) (A state ground is "independent" of a federal claim if the state court "actually relied on a state rule sufficient to justify its decision."); *Lowe v. Abrahamson*, 51 F.3d 275, 1995 WL 150585 (7th Cir. 1995) (unpublished) (concluding that there is no jurisdiction to address

10

"what is important is that the *substance* of the federal claim be presented fairly."  *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996) (quoting *Verdin*, 972 F.2d at 1474) (emphasis in original); *see also Moleterno v. Nelson*, 114 F.3d 629, 634-35 (7th Cir. 1997) (referencing federal or state cases containing constitutional analysis "does not automatically avoid a waiver").

As this record shows, Sanders elected to request a new trial on state procedural and statutory grounds, pointing specifically to the power of discretionary reversal found in Wis. Stat. § 752.35.  By framing his issue in such a way, the state court of appeals quite understandably, indeed correctly, did not construe Sanders to be making (or even implicating) a constitutional claim.[6]  Thus, the state court did not have the opportunity to consider the substance or "adjudicate squarely the federal issue" that he now attempts to present here in federal court.  *Verdin*, 972 F.2d at 1474.  This is not sufficient to satisfy the doctrine of exhaustion.  *See Picard*, 404 U.S. at 275-76; *see also Lieberman*, 505 F.3d at 671 (concluding that a state court petition alleging violation of state procedure in

---

a request for a new trial under Wis. Stat. § 752.35 on federal habeas corpus review).

[6] Indeed on this record, Sanders appears to have *purposely* pursued a novel theory based on state law because the federal claim that Sanders proposes here was foreclosed by well-established state and federal precedent, holding that the statutory definition of mental disorder found in Wis. Stat. § 980.01(2) "satisfies the mental condition component required by substantive due process for involuntary mental commitment."  *State v. Post*, 197 Wis. 2d 279, 303, 541 N.W.2d 115 (1995); *see also State v. Laxton*, 2002 WI 82, ¶ 2, 254 Wis. 2d 185, 647 N.W.2d 784 (upholding civil commitment under Chapter 980 because evidence that is sufficient to meet the pattern jury instruction "necessarily and implicitly includes proof that such person's mental disorder involves serious difficulty in controlling his or her behavior"); *see also Laxton v. Bartow*, 421 F.3d 565, 571-72 (7th Cir. 2005) (rejecting the same claim on federal habeas corpus review); *see also In re Commitment of Phillips*, 2012 WI App 62, 341 Wis. 2d 489, 815 N.W.2d 406 (unpublished) (rejecting a challenge to the same jury instruction used in Sanders' case).

a civil commitment case was insufficient to exhaust a federal due process claim).   Because Sanders bypassed his opportunity to exhaust state court remedies with respect to a substantive due process theory, the respondent maintains that further review of this issue is barred by the doctrine of procedural default.

## II. Procedural Default

A habeas petitioner who missed an opportunity to present a claim properly in state court commits a procedural default that may forfeit federal review of that claim.   *See Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) (citations omitted); *see also Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) ("If a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted.").   Where a procedural default has occurred, federal habeas corpus review is available only if the petitioner can demonstrate: (1) a "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010) (citing *Johnson v. Hulett*, 574 F.3d 428, 430 (7th Cir. 2009).

Cause to overcome a procedural default requires a showing "that some objective factor" prevented compliance with the procedural rule.   *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   To show actual prejudice, a petitioner must present evidence that the alleged violations "worked to his actual and substantial

disadvantage," which infected the entire state court proceeding with "error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (citation omitted).   To the extent that it applies in the civil commitment context at all, a fundamental miscarriage of justice occurs only where the petitioner presents evidence showing that he is "actually innocent" of the charges against him or the punishment imposed.  *See Dretke v. Haley*, 541 U.S. 386, 393 (2004); *see also Brown*, 599 F.3d at 609 (commenting that it is unclear whether the fundamental-miscarriage-of-justice exception applies to cases of civil commitment).

Sanders has filed more than one reply to the respondent's motion for dismissal, but does not even attempt to show cause for his procedural default.   Absent a showing of cause, a defaulted claim is procedurally barred and a federal habeas corpus court need not inquire further by examining the issue of prejudice.  *McClesky v. Zant*, 499 U.S. 467, 502 (1991).  Even assuming that cause had been shown, Sanders cannot (1) demonstrate actual prejudice from the default or (2) show that he meets the exception reserved for fundamental miscarriages of justice.   On the contrary, petitioner's proposed claim is already foreclosed by precedent.  *See Laxton*, 254 Wis. 2d 185, ¶¶ 20-21; *see also In re Commitment of Phillips*, 2012 WI App 62, ¶ 13, 341 Wis. 2d 489, 815 N.W.2d 406 (unpublished) (concluding that the challenged jury instruction, when read as a whole, is sufficient to make clear the required connection between an individual's mental disorder and his ability to control his behavior).   Therefore, Sanders' claims are procedurally barred and his petition must be dismissed.

13

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  This requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although Rule 11 allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case.  For the reasons stated above, reasonable jurists would not debate whether review is barred by the doctrine of procedural default or whether the court's ruling was correct.  Alternatively, petitioner has

not made a showing, substantial or otherwise, that he was denied his constitutional rights during the civil commitment proceeding at issue.   Therefore, no certificate of appealability will issue.


ORDER

IT IS ORDERED that:

1.  The respondent's motion to dismiss the habeas corpus petition filed by Paschall L. Sanders (Dkt. # 10) is GRANTED.

2.  A certificate of appealability is DENIED.   If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 24th day of September, 2013.


BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

15